A-3

"Appendix 1 - Legal Paper - Population Databases.docx"

# APPENDIX 1

# LEGAL PAPER - POPULATION DATABASES

When examining population databases for intrastate redistricting purposes it is important to remember that one may be potentially talking about two sets of data; one used by the state to draw up the plan and possibly another used by the courts to assess "one person one vote." The courts have been clear that population databases in addition to the population database used to judge one person one vote are allowed. The most obvious and prominent example of this is in Hawaii. Hawaii has an interesting factual situation. Because of the large number of military personnel stationed on a variety of Naval, Marine, Army and Air Force installations it is possible with little effort to draw districts which meet the one person one vote standard but only contain a handful of voters. Virtually none of the military personnel in Hawaii are Hawaii voters. Therefore, by grabbing a section of military population that would almost completely constitute a legislative district and including it with a few registered voters, literally a single family could elect a legislator. This is what was referred to in the 19th century as a "rotten borough." As the court stated in *Burns v. Gill,* "if total population were to be the only acceptable criterion upon which legislative representation could be based, in Hawaii grossly absurd and disastrous results would flow... the factors of tourists and the military concentration in particular regions of Oahu... are and apparently will be ever present in Hawaii."[55] (Emphasis added) Hawaii has attempted to solve this problem by requiring that the numbers of permanent residents and registered voters are equalized in the state's districts.

The courts examined this issue in a series of cases beginning with *Burns* v. *Richardson.*[56] In *Richardson* the Supreme Court stated that "we hold the that the present [Hawaii] apportionment satisfies the Equal Protection Clause only because on this record it was found to have produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis." The Court also observed in a footnote from the same paragraph that the Fourth Circuit in *Ellis v. Mayor & City of Baltimore* had "disapproved a registered voter's basis for apportioning the governing council of Baltimore Maryland. The Court of Appeals held that this basis was permissible only if it yielded results substantially approximating those obtained by use of a total population base."[57]

In the 1980's, a subsequent district court in Hawaii noted the *Ellis* footnote and while conceding that there might be another permissible population base (such as citizen population), registered voters was not such a population base and total population as reported by the census was. As a result, "the plan's [Hawaii's congressional and legislative] failure to replicate the results of a total population-based apportionment creates at least a prima facie showing of invalidity." The court found that once the prima facie case had been made the burden was on the state to justify the deviations.[58] The *Travis* Court did not forbid the policy of equalizing the voters between the districts but still required that it equalize total population as well.

There can be substantial deviations from an equal distribution of persons across districts depending upon the population base used for apportionment. *See Chen v. City of Houston*, (Thomas, J., dissenting) (stating that whether "population" for purposes of apportionment means "total population" or "citizen voting age population" may "be dispositive of whether" the Equal Protection Clause has been violated)[59]; *Garza v. County of Los Angeles*, (Kozinski, J., concurring

and dissenting in part) (recognizing the potential substantive difference between striving for "equality of population" and "equality of voting strength" in the apportionment process, and stating that "[a]pportionment by population can result in unequally weighted votes, while assuring equality in voting power might well call for districts of unequal population.").[60]

The issue raised in these opinions is whether the mandates of equal protection are related to equality of representation or equality of electoral power. The rhetoric of the apportionment revolution of the 1960s was one person one vote. The Supreme Court talked virtually exclusively about equality of votes. This becomes significant only when there is a disconnect between equality of total population and numbers of voters or potential voters (for example, area with large non-citizen populations or other large non-voting groups).

A similar set of issues is implicated by the recent consideration by many states of legislation which would redistribute the census results so as to reallocate prisoners from the prisons where they were held on the census day to the address which they listed as their residence on the day of their incarceration. At first blush such reallocation would appear to be constitutional, particularly since states like Kansas have reallocated college students from their campuses back to their homes in Kansas.[61] However, unlike Kansas, many of the states considering prisoner reallocation have decided not to count out-of-state prisoners at all. This would appear to conflict with the principles set down in the Hawaii cases. As the court noted in the *Travis* case, having received a second congressional seat the state cannot proceed to ignore the population which allowed this to occur.[62] A similar issue would appear to be at work if a state simply removed all of the out-of-state prison population from its redistricting population database. Prison population can have significant effects on state legislative districts particularly in light of the intentional deviation manipulation issues highlighted by *Larios* case. Therefore, we can almost certainly expect litigation of these issues in this redistricting cycle. The ultimate constitutionality of the statutes will most likely depend on the method of the reallocation and whether it creates a discriminatory manipulation of the deviations between the districts.

[55] *Burns v. Gill* 316 F.Supp. 1285, 1293 (D. Haw. 1970).
[56] *Burns v. Richardson* 384 U.S. 73 (1966).
[57] *Ellis v. Mayor & City of Baltimore* 352 F.2d 123, 130 (4th Cir. 1965).
[58] *Travis v. King*, 552 F.Supp. 554, 572 (D. Haw. 1982).
[59] *Chen v. City of Houston*, 532 U.S. 1046, 2021 (2001) (Thomas, J., dissenting)
[60] *Garza v. County of Los Angeles*, 918 F.2d 763, 781 (9th Cir. 1990) (Kozinski, J., concurring and dissenting in part).